```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION
```

```
MARY MITCHELL,                    )
                                  )
Plaintiff,                        )
                                  )
vs.                               )    NO. 2:04-CV-424
                                  )
PRIMARY FINANCIAL SERVICES,       )
L.L.C.,                           )
                                  )
Defendant.                        )
```

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint, filed on December 15, 2004.  For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Plaintiff, Mary Mitchell, defaulted on her credit card account with Chase National Bank ("Chase").  In accordance with the terms of the credit card agreement between Chase and Plaintiff, the interest rate on her outstanding balance was increased.  Chase then sold the debt to the Bureaus, which enlisted Defendant, Primary Financial Services, LLC ("PFS"), to collect the debt.  The default interest rate is above 21% per annum, and continues to be charged by PFS.  Plaintiff filed her complaint, stating that PFS violated, and continues to violate, the Fair Debt Collection Practices Act by charging an

usurious interest rate under the Indiana Uniform Consumer Credit Code. *See* 15 U.S.C. § 1692, *et seq.*; Ind. Code § 24-4.5-1-101, *et seq.* Defendant filed the instant motion to dismiss, arguing that the Indiana Uniform Consumer Credit Code is preempted by section 85 of the National Bank Act. The issues have been fully briefed and are ripe for adjudication.

DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. Under the "simplified notice pleading" of the Federal Rules of Civil Procedure, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993) (a motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief). A court must construe pleadings liberally and "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). When considering a defendant's motion to dismiss, a court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520

(7th Cir. 2001). A complaint need not plead law or be tied to one legal theory. *LaPorte Cty. Republican Cent. Comm. v. Bd. of Comm'rs of the Cty. of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet*, 953 F.2d at 1078). A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiffs make clear that they do not plan to prove an essential element of their case. *Id*.

The issue in this case is whether Plaintiff has stated a claim upon which relief can be granted by pleading the Indiana Uniform Consumer Credit Code ("IUCCC") makes it illegal for PFS to charge interest in excess of 21% per annum. Defendant admittedly has charged interest in excess of 21%. There are no reported cases which have dealt with this issue directly.

Defendant argues the IUCCC is preempted by section 85 of the National Bank Act ("NBA"). *See* 12 U.S.C. § 85. Plaintiff agrees that with regard to the credit card issuer (i.e. Chase, who is not a party to this lawsuit), section 85 preempts Indiana law. However, Plaintiff alleges Defendant is not a national bank, and is therefore subject to the IUCCC. Defendant does not argue it is covered by section 85 in its own right; rather, it states that, as an assignee of the debt, Defendant stands in the shoes of Chase. If Defendant is correct, Plaintiff has not stated a claim upon which relief can be granted and a dismissal would be proper. Conversely, if Plaintiff is correct in arguing Defendant, an assignee, took subject to the police power of

Indiana, then the case must be allowed to proceed and dismissal would be improper. Thus, the only issue before the Court is whether Defendant stands in the shoes of Chase, thus allowing it to charge an interest rate which otherwise violates Indiana law.

Section 85 of the NBA permits a banking association to charge any interest rate allowed by the state in which it is located. *See* 12 U.S.C. § 85 (stating "[a]ny association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located . . . ."). Chase is a national bank located in Delaware. Neither party alleges the default interest rate on the card in issue is usurious under Delaware law. No claim under Indiana law could lie against Chase. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003) (holding the National Bank Act provides the exclusive remedy for usury claims against national banks). Thus, until the point at which the assignment to the Bureaus was made, Plaintiff had no legal claim.

National banks are essentially instruments of the federal government, which facilitate a national banking system and a national loan market. *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 315 (1978). Therefore, it is the policy of the NBA to facilitate a market conducive to lending institutions being able to efficiently lend. *See id.*

-4-

Defendant's argument is relatively straightforward. Relying on *Vickey v. Asset Acceptance, LLC*, No. 03 C 5193, 2004 WL 1510026 (N.D. Ill. July 2, 2004), Defendant notes that a similar claim was brought against Asset Acceptance. Vickey obtained a Discover Card from Greenwood Trust Company, a state bank chartered under Delaware law. Vickey fell behind on payments and his account was sold to the defendant in that action, Asset Acceptance. Asset enlisted the help of another defendant, McMahan & Sigunick, in collecting the debt. Vickey brought suit claiming the defendants were not licensed lenders in Illinois and they were charging Vickey more than a permissible amount under the Illinois usury laws.

In *Vickey*, the court ruled for the defendant on summary judgment based upon the federal Depository Institutions Deregulation and Monetary Control Act ("DIDA"), because the DIDA preempted the state usury law. *Id.* at *3. In so holding, the court stated that an assignee stands in the shoes of an assignor. *Id.* at *2. Therefore, if the originator/assignor of the loan had the authority to make the loan with the terms in question, its assignee has an equal right to enforce the same terms unless there is a compelling reason to disregard the rule that an assignee stands in the shoes of its assignor. *Id.* at *2. The DIDA preempted the Illinois Interest Act by providing a state chartered bank may charge any interest rate allowed by the state in which it is chartered, even to out-of-state customers. *Id.; see also* 12 U.S.C. § 521. Accordingly, since

-5-

Greenwood Trust had authority under the DIDA to make the loan as it was made, its assignee had the authority to enforce the terms against the plaintiff. *Id.* at *3.

Defendant argues by analogy that this Court should make the same finding of preemption. The DIDA provides the same interest rate options to state chartered banks as the NBA provides to national banks. *Compare* 12 U.S.C. § 85 *with* 12 U.S.C. § 1831d(9). Because of the similarity between the rights provided under each Act, the Acts should be read *in pari materia*. If the two Acts are so read, the result must be the same, or so the argument goes.

However, Defendant's analogy may not bridge the gap fully. Plaintiff counters that Defendant does not account for any differences between the Illinois Interest Act and the IUCCC. This makes no difference with regard to the preemption question as to originators, but the right of Chase to charge the interest rate is not at issue. The difference between the instant case and *Vickey* is that unlike the Illinois Interest Act, the IUCCC provides the assignee of a debt is a lender within its meaning. The *Vickey* court found no reason to "disregard the general rule that an assignee stands in the shoes of the assignor." *Id.* at *2. Here, there allegedly is such a reason, namely that the state law at issue is clear as to how to treat assignees. Ind. Code § 24-4.5-3-107(1) (stating "[e]xcept as otherwise provided, 'lender' includes an assignee of the lender's right to payment but use of the term does not in itself impose on an

-6-

assignee any obligation of the lender with respect to events occurring before the assignment."). Therefore, Plaintiff claims the assignee must take subject to the police power of Indiana and the IUCCC restrictions on interest rates.

<u>The IUCCC</u>

Indiana Code, Article 24-4.5, contains the Indiana Uniform Consumer Credit Code. The IUCCC must be properly analyzed in order to determine whether Plaintiff has stated a claim. If the IUCCC does not apply to the situation, then Plaintiff has not stated a claim, regardless of whether it is preempted. The focal point of this analysis is section 24-4.5-3-201, which states:

> Loan Finance Charge for Consumer Loans other than Supervised Loans — (1) Except as provided in subsections (6) and (8), with respect to a consumer loan other than a supervised loan (I.C. 24-4.5-3-501), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-one percent (21%) per year on the unpaid balances of the principal.

A "consumer loan" is defined broadly to include any loan made to an individual debtor for personal, family, or household use, and paid in installments or "a loan finance charge is made." Ind. Code § 24-4.5-3-104. Additionally, the loan is not to exceed $50,000 or it must be secured by the debtor's home. *Id.* A loan finance charge essentially brings credit card transactions within the IUCCC. Ind. Code § 24-4.5-3-109. Supervised loans are consumer loans made with an interest rate

-7-

over 21%.  Ind. Code § 24-4.5-3-501.  Neither subsection (6) nor subsection (8) apply in this case.  *See* Ind. Code § 24-4.5-3-201. Only a supervised lender can make a supervised loan, and a supervised lender is one licensed to make consumer loans.  Ind. Code § 24-4.5-3-501, 502.

Thus, the loan in question would arguably fall under the purview of the IUCCC as it is a consumer loan; however, it was a supervised loan as Chase is a supervised lender.  *See* Ind. Code § 24-4.5-1-301(20) (defining "supervised financial organizations" to include national banks); Ind. Code § 24-4.5-3-502 (allowing Chase to make consumer loans in Indiana without first becoming licensed by the state).  Thus, by taking an assignment of a supervised loan, Defendant, an unsupervised and unlicensed lender, may have violated the IUCCC by charging usurious interest.  Ind. Code § 24-4.5-3-201. Defendant became a lender by taking an assignment of Chase's right to payment.  Ind. Code § 24-4.5-3-107.  There is no evidence as to whether Defendant regularly engages in such activity, thus the Court is unable to determine whether the law has been violated as the IUCCC only prohibits unsupervised lenders from regularly engaging in making or taking assignment of consumer loans.  *See* Ind. Code § 24-4.5-3-502. Thus, unless the NBA preempts the IUCCC, dismissal would be improper.

The National Bank Act

Preemption is a result of the Supremacy Clause of the United

States Constitution, which states that laws of the United States passed pursuant to constitutional authority are the supreme law of the land and trump contrary state law.  U.S. CONST. ART. VI, § 2.  The NBA is such a law, passed pursuant to Congress' plenary power over interstate commerce.  *See* U.S. CONST. ART. I, § 8, CL. 3.  The focal point of the inquiry into the NBA will be 12 U.S.C. section 85, which states in pertinent part, "[a]ny association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located . . . ."  An association is a national banking association formed within the requirements of 12 U.S.C. section 21.  Chase, by being designated a national association, fits within this definition.  12 U.S.C. § 21.  As such, Chase has the authority to make loans up to the maximum interest rate allowed by Delaware, its "location."  12 U.S.C. § 85; 12 U.S.C. § 81 (stating that a national association's place of business is specified in its articles of association); 12 U.S.C. § 21 (specifying that the organization certificate must include the place where the national association will conduct its business).

   The loan was authorized and made through the purview of the NBA.  Furthermore, it complied with the precepts of the NBA.  The IUCCC was preempted insofar as it is contrary to the NBA.  Thus, the making of a loan is unaffected by the IUCCC.  So the issue is whether the

assignment of the delinquent account removed the loan from the NBA's governance and placed it under the governance of the IUCCC. Defendant is not covered by the NBA, as it is not a national association as therein defined. 12 U.S.C. § 37 (stating the NBA only applies to national banking associations, and associations authorized by the acts of Congress to engage in the business of banking). Plaintiff asserts an assignee, operating within the State of Indiana, of a loan takes said loan subject to the police power of Indiana; and, if the statutory law changes the assignee's rights, then the statute governs. Plaintiff cites *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118 (7th Cir. 2003) for this proposition. Plaintiff's reading of *Neff* is overly broad. Neff received a credit card, became delinquent, and the account was sold to Capital One. Neff sent payment in full to Capital One and never heard from anyone regarding this debt until nearly five years later, when he was informed he still owed a significant amount of money to yet another assignee of the debt. A co-plaintiff was in substantially the same situation with the same defendant, CAMCO. The Plaintiffs sued CAMCO for violating the Truth in Lending Act ("TILA") by not sending statements to the Plaintiffs. The court held there was no violation and upheld the dismissal of the plaintiffs' complaint. *Id.* at 1120-22.

The Seventh Circuit began analyzing the debt itself under federal law. *Id.* at 1120. Only creditors are required to send statements to debtors under the TILA and assignees of a debt are not considered

creditors.  *Id.* at 1120-21.  Congress had determined how an assignee of a debt is to be treated under the TILA.  *Id.* at 1121.  This trumped the general rule that an assignee stands in its assignor's shoes with regard to the assignor's rights and duties.  *Id.*  The Court stated, "[w]here Congress and the Federal Reserve wished to impose requirements on assignees or subsequent holders, they did so explicitly."  *Id.*

Congress has chosen to regulate the interest rates a national bank may charge in its dealings with its foreign customers.  Congress has said nothing with regard to assignees of such loans.  If Congress intended to change the permissible interest rate that may be charged by an assignee of the originator, then Congress would have provided for such a change.  Congress intended that lending would be efficient across state lines.  *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 315 (1978).  On the other hand, by not acting to preempt state law affecting assignees, Congress may have avoided preempting state law.  Indeed, 12 U.S.C. section 43 makes it difficult for the appropriate federal banking agency to issue opinion letters stating it believes the NBA preempts state consumer protection laws.  It does so by prescribing a notice and comment period, among other things.  *Id.*  Although not controlling on this Court, section 43 indicates Congress' intent that preemption of state consumer protection laws not be taken lightly, and indicates Congress did not intend for blanket preemption.  *Id.*

-11-

The United States District Court for the Southern District of Indiana has discussed a similar claim relating to payday loans. *See Hudson v. Ace Cash Express, Inc.*, No. IP 01-1336-C H/S, 2002 WL 1205060 (S.D. Ind. May 30, 2002). Hudson entered into a loan agreement at an Ace location in Indiana. The agreement clearly stated the loan was being made by Goleta National Bank in California. All credit decisions were to be made by Goleta, and Ace would purchase a 95% participation interest in the loan. The interest rate, under the IUCCC formula, was 391.07% per annum. The Court held the NBA preempted the IUCCC and thus dismissed the claim as the interest rate was proper under California law. *Id.* at *3, *8.

The court reasoned Goleta was a national bank, which implied that it had the right to charge the maximum allowable interest rate under the law of its home state, California. *Id.* at *3 (citing *Marquette Nat'l Bank*, 439 U.S. 299; *Smiley v. Citibank (South Dakota) N.A.*, 517 U.S. 735 (1996)). The court stated forum trumps substance in lending situations; thus, regardless of the substance, Goleta was the lender and the NBA governed the situation. *Id.* at *4 (citing *Krispin v. May Dept. Stores Co.*, 218 F.3d 919 (8th Cir. 2000)). The participation fee did not convert Ace into a lender, and the IUCCC was accordingly preempted.

Defendant argues the case at bar is analogous and should also be dismissed. The analogy, however, is not as strong as Defendant believes. The IUCCC does not address the circumstances in *Hudson*.

-12-

"Lender" is defined to include an assignee of a supervised debt, but does not include a party which has taken a participation interest in a loan made by a supervised lender or under the NBA. Ind. Code § 24-4.5-3-107(1).

 *Krispin* is likely the closest case to the situation at hand. May issued credit cards to customers, but was restricted by Missouri law in the amount of, *inter alia*, late fees it could charge. May formed a wholly owned subsidiary national bank ("bank") to which it assigned all of its credit card accounts. This was done solely to avoid Missouri usury law. The bank then sold all of its receivables to May, which acted as the collector on said accounts. The Eighth Circuit Court of Appeals held that since the bank maintained control over the accounts and May acted as the collector due to its status as an assignee of the receivables, the NBA controlled the situation. *Krispin*, 218 F.3d at 923. The instant case is clearly distinguishable as Chase has no interest and no control over the accounts in question. In *Krispin*, the bank had control over the terms and conditions of the accounts, and it was only responsible for collecting other receivables it purchased from the bank. Here, the entire debt is owned by an assignee, the terms are in control of the Bureau, and Defendant is responsible for collecting. Chase plays no role and has washed its hands of the situation.

 As has been demonstrated, the law in this area is unsettled. No case law which is controlling has been cited by either party or found

by the Court.  The cases cited by each party can easily be distinguished from the case at bar, either due to the underlying state law or due to the subject matter.  Most analogous cases deal with payday loans, which are clearly a different situation from that of this case.  Others involve laws which are different from the IUCCC, or situations where the originator of the loan maintained at least some modicum of control over the loan.  At this early stage of the litigation, more discovery is needed to determine the facts of the case.  Assuming Plaintiff's facts are true, it is possible Plaintiff has stated a claim upon which relief can be granted.  The issue is a close one, but more information (both factual and legal) is needed before a final determination can be made.  The Court thus determines that dismissal under Rule 12(b)(6) would be improper.

CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Complaint is **DENIED**.

DATED: April 21, 2005            S/RUDY LOZANO, Judge
                                 **United States District Court**